IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PURDUE PHARMA L.P.,<br>THE P.F. LABORATORIES, INC.,<br>PURDUE PHARMACEUTICALS L.P.<br>and RHODES TECHNOLOGIES,<br><br>Plaintiffs,<br><br>v.<br><br>COLLEGIUM PHARMACEUTICAL, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 15-cv-13099-FDS<br>)  (Lead Docket No.)<br>)<br>)<br>)<br>) |

**DEFENDANT COLLEGIUM PHARMACEUTICAL, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR EXPEDITED HEARING OF ITS MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS AND FOR ENTRY OF FINAL
JUDGMENT**

Collegium Pharmaceutical, Inc. ("Collegium") respectfully submits this brief in support of

its motion for expedited hearing of its motion for partial judgment on the pleadings and for entry

of final judgment filed concurrently herewith.

## I.   INTRODUCTION

Expedited resolution of Collegium's motion for partial judgment is appropriate and

necessary for at least three reasons: (i) Collegium's product will help solve the prescription

opioid abuse crisis which claims new victims daily; (ii) Collegium's product will offer relief to

patients in severe chronic pain who have difficulty swallowing and therefore cannot take existing

extended-release opioids, and (iii) it is the policy of the Hatch-Waxman statute to make new

drugs like Collegium's available to the public expeditiously.

Prompt resolution of this action is important to mitigate a public health crisis. This action

concerns a new drug that responds directly to ongoing deaths, crime, and addiction from the

abuse of prescription opioids including, OxyContin. Stemming the tragedy of drug abuse is a top priority of Federal and State health, government and law enforcement officials. The Federal Food & Drug Administration ("FDA") has been committed to expedited review of the drug at issue, in an effort to get Collegium's safer drug in the hands of doctors and patients and tentatively approved Collegium's New Drug Application ("NDA") on November 6, 2015 subject only to entry of judgment by this Court on the patents already adjudged invalid in a prior action.

Collegium's motion for partial judgment on the pleadings seeks entry of final judgment of invalidity of three of the four patents asserted in this case on the basis of collateral estoppel. As described in greater detail in Collegium's brief in support of its motion, the three patents previously invalidated are the only thing standing in the way of Collegium receiving final approval from FDA to market its proposed product. Those three patents, however, were found to be invalid by the Southern District of New York after a three-week bench trial. Stated another way, under the Hatch-Waxman statutory scheme, Collegium's new and superior proposed product cannot come to market for 30 months unless this Court enters a final judgment as to the three-patents previously invalidated by the Southern District of New York.

## II.   BACKGROUND

Purdue has sued Collegium based on Collegium's filing of an application for FDA approval of a novel, abuse-deterrent opioid product, Xtampza™ ER, under §505(b)(2) of the FDA Act. The purpose of Section 505(b)(2) is to provide for expedited consideration by FDA of new drugs. Collegium has developed an orally administered opioid in a novel formulation that cannot be effectively crushed or chewed by an abuser in order to release the entire dose of the drug at once ("dose dump"). Holdreith Decl. Ex. A at 4, 26–27, 88. Also, studies have demonstrated that the formulation provides barriers to potentially dangerous alternative routes of drug administration including nasal and intravenous use. *Id.* at 31–33; 35–42. As the Court is

surely aware, opioid abuse is at an all-time high. Xtampza™ ER, was developed as a direct response to the opioid epidemic and the product has been shown to have superior abuse-deterrent properties to OxyContin. *Id.* at 22–45. The medical community and the public are in dire need for such a product. The only thing standing in the way of the public's access to Xtampza™ ER, will be this action if it is not resolved.

Collegium's product is _not_ a generic copy of Purdue's OxyContin product. Collegium developed its own product and its own, patented, abuse-deterrent technology. In fact, Xtampza™ ER is not bioequivalent to OxyContin and Collegium has conducted over 10 clinical trials to support FDA approval. Furthermore, Collegium has spent the last 10 years and over $60 million in the development and testing of its Xtampza™ ER, product. The Hatch-Waxman statutory scheme contemplates that any litigation related to a §505(b)(2) application will reach resolution by the time FDA has completed its review. Prompt resolution of this action is of the utmost importance to the public and public safety, and has significant financial consequences for Collegium.

Any delay in reaching the merits would serve only to enhance Plaintiffs' profits at the expense of public access to a safer, non-infringing competitor in the oral opioid market. Collegium has approached the problem(s) in an entirely different way than the patents asserted by Purdue, and the public should get the benefit as promptly as possible. Collegium similarly would be greatly prejudiced by any delay in resolving this case. There is significant cost and time required to build inventory of a new drug prior to commercial launch. This requires timely manufacture of inventory so that the product does not expire before it can be while simultaneously hiring a sales force. Any uncertainty as to the timing of resolution of this case will either prevent Collegium from timely ramping up for launch or will cause Collegium to

expend unnecessary resources in preparing for a launch, the timing of which is uncertain. Time is therefore of the essence.

Moreover, the public is suffering ongoing harm from the lack of opioid products that can effectively mitigate severe chronic pain while providing significant barriers to abuse of the drug. OxyContin is used for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. Holdreith Decl. Ex. B. OxyContin is currently the ONLY available option for patients that require oxycodone in an extended-release form. It is typically prescribed to patients with conditions such as chronic lower back pain, chronic neck pain, chronic cancer pain, osteoarthritis and abdominal pain. *Id.* It is, however, a highly abusable drug that carries warnings and precautions stating "crushing, chewing, or dissolving OXYCONTIN tablets can cause a rapid release and absorption of a potentially fatal dose of oxycodone." *Id.* FDA testified before Congress in 2013 that OxyContin abuse is part of "a problem that has cast a terrible shadow across our nation and led to a public health crisis of devastating proportions." Holdreith Decl. Ex. C. Although Purdue has introduced a form of OxyContin that is intended to be abuse-resistant, drug abusers have found relatively simple methods to defeat the formulation's release profile and Purdue's product continues to experience a high rate of abuse. A New England Journal of Medicine Study found that while the new Purdue formulation has reduced the rate of abuse, it has not eliminated abuse. Holdreith Decl. Ex. D.

Collegium has developed different mechanisms to deter abuse, and its clinical and other scientific studies show that the Collegium formulation is not only effective in deterring abuse, but significantly more resistant to tampering than OxyContin. In September of this year, FDA convened an advisory committee of 23 independent experts with specific expertise in opioids

who are MDs, PhDs, pharmacists and other public health experts to discuss Collegium's
505(b)(2) application, including specifically whether the data characterizing the abuse-deterrent
properties support the likelihood that Collegium's product will have a meaningful effect on
abuse. Holdreith Decl. Ex. E. At the conclusion of the meeting, all 23 panelists voted
unanimously to recommend approval of Collegium's Xtampza™ ER product. Holdreith Decl.
Ex. F. In reaching the decision, the "[p]anelists felt that the new formulation would pose a
significant advantage for the large number of chronic pain patients who have difficulty
swallowing pills . . . ." *Id*. One of the panelists went so far to say that the drug is "an advance in
abuse-deterrence and I think we will see a meaningful reduction in abuse with this drug." *Id*.

This is a straightforward case. Plaintiffs admit that the three Orange Book listed patents
stand invalid. Collegium has prepared a concise motion for judgment on the pleadings based on
collateral estoppel. A ruling on this motion can completely, quickly and efficiently dispose of the
3 of the 4[1] patents in this case without a trial in this Court.

Any additional delay in reaching resolution will only serve to unnecessarily increase
costs to the parties and complicate the proceedings. Moreover, Collegium will assert antitrust
claims based on Purdue's maintenance of this action. Prompt resolution of this suit will mitigate
the need for Collegium to pursue such antitrust claims.

---

[1] Purdue has also accused Collegium of infringing U.S. Patent No. 8,652,497 (D.I. 1 at ¶ 47).
That patent, however, is not listed in the Orange Book and was not previously litigated. Because
the '497 patent is not listed in the Orange Book, it cannot form the basis of an automatic 30-
month stay of FDA approval and does not prevent market entrance by Collegium. If Purdue
believes that the '497 patent should bar market entry, it should file a motion for preliminary
injunction, just as any other, non-ANDA litigant would.

III.   **ARGUMENT**

A.   **Congressional Policy Contemplates Prompt Judicial Resolution To Allow The Public Access To Competitive Drugs.**

"[T]he statutory scheme of the Hatch-Waxman Act relies on early resolution of patent disputes." *Teva Pharma. Inc. v. Novartis Pharma Inc.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007) (citations omitted). In fact, the Act states that "each of the parties shall reasonably cooperate in expediting the action." 21 U.S.C. §355(c)(3). Congress granted the Court the power to shorten the 30-month stay of approval if a party fails to reasonably cooperate in expediting the action. 21 U.S.C. §355(c)(3)(C).On November 6, 2015, FDA tentatively approved Collegium's New Drug Application. Holdreith Decl. Ex. G.  Now that FDA has tentatively approved Collegium's application, the only thing standing in the way of Collegium's ability to market, sell and distribute its proposed product is lack of a final judgment of invalidity as to the three Orange Book listed patents in this case.

B.   **Xtampza™ ER Meets Needs Unmet by Currently Available Oral Opioids.**

Xtampza™ ER is not a copy of existing oral opioids and due to its unique formulation, the product addresses unmet needs in a variety of patients. As described below, Xtampza™ ER is based on a fundamentally different technology compared to oral opioids currently on the market; the formulation's properties address the issue of abuse of the drug as well as accidental medication errors. In addition, Xtampza™ ER' formulation allows it to be used in patients with chronic pain that have difficulty swallowing (dysphagia). Each of these benefits is addressed below.

1.   **No safe alternatives to OxyContin are presently marketed.**

Chronic pain represents a public health crisis of epidemic proportions affecting approximately 100 million adults in the United States. In 2014 alone, there were approximately

29 million extended-release opioid prescriptions, approximately 6 million of which were for OxyContin. This escalating use of opioids has been shown to correlate with an increased incidence of opioid-related drug abuse. Opioid analgesics are often manipulated (eg, crushed, chewed or dissolved) for purposes of abuse. As such, the pharmaceutical industry has sought to develop abuse-deterrent formulations of opioid analgesics. Unfortunately, formulations currently on the market, including OxyContin, have limited abuse-deterrent properties. For instance, OxyContin tablets are still susceptible to manipulation and can be defeated with common household tools such as graters, pill crushers and food choppers. As such, there is a significant, unmet medical need for safer, more abuse-deterrent formulations for opioid products. Additionally, in response to this crisis, the White House, Congress, FDA and other agencies have begun to act, with initiatives such as the White House's Prescription Drug Abuse Prevention Plain in April 2011, the STOP Tampering of Prescription Pills Act of 2013, and abuse-deterrent labeling incentives, amongst other initiatives.

Despite this clear directive to develop abuse-deterrent opioids, no such alternatives to OxyContin are currently available on the market. Xtampza™ ER, however, has been shown to have much greater abuse-deterrent properties than currently available formulations. Specifically Xtampza™ ER is designed to resist particle size reduction and subsequent "dose dumping" when subjected to rigorous physical manipulations such as breaking, cutting, crushing or chewing. Because of the solubility of Xtampza™ ER it cannot be dissolved in water and then injected. Furthermore, snorting Xtampza™ ER does not provide the "high" that drug abusers are seeking. As such, Xtampza™ ER offers significant advantages, in terms of abuse resistance, over currently available opioids. In addition, its advanced crush resistant properties provide protection from medication errors associated with chewing, breaking or crushing of extended-release

products by legitimate patients who manipulate products in an attempt to make them easier to swallow, not knowing the potential risks associated with these practices. Because there are no truly abuse deterrent alternatives currently on the market that can also be used to treat dysphagic patients, Collegium's proposed product is the most likely way for a safe, abuse and error resistant opioid to reach the market on a timeframe consistent with the schedule in place for FDA's review.  As discussed above, the benefits of Collegium's proposed product were confirmed by members of the advisory committee in issuing their unanimous recommendation to approve Collegium's application.

      **2.**    **There are no extended-release, oral abuse-deterrent opioids presently suitable for patients with chronic pain with dysphagia.**

Additionally, Xtampza™ ER offers an important solution to address a significant unmet clinical need for extended-release opioids that can be administered by alternate routes in patients who cannot take tablets or capsules orally, including patients who have both chronic pain and dysphagia.  There are currently no approved, abuse-deterrent opioids suitable for this patient segment consisting of over 11 million chronic pain patients in the U.S. who cannot swallow pills or have difficulties swallowing. Holdreith Decl. Ex. H; Ex. I. Indeed, FDA recognizes this patient population has having unmet medical need. Holdreith Decl. Ex. J. Furthermore, a market research survey of 1,021 patients with chronic pain showed that a meaningful number of "legitimate" patients (non-abusers) are crushing or chewing opioids as a result of having difficulties swallowing not understanding the consequences. In fact, the same market research study showed that 65% of patients were not aware that crushing or grinding changes the release characteristics of the medication, which has the potential to lead to serious adverse events (including death). Holdreith Decl. Ex H. Because Xtampza™ ER's formulation is comprised of microspheres (the size of a grain of sand) in a capsule, Xtampza™ ER capsules can be opened

8

and sprinkled on food for patients with difficulty swallowing without changing the safety or effectiveness of the drug.

### C.  The Nature and Stage of the Proceedings Allow for Early Resolution of This Case As It Relates to the Three Orange Book Listed Patents.

As discussed in greater detail in Collegium's memorandum in support of its motion for partial judgment on the pleadings, this case is ripe for expeditious resolution as it relates to the three Orange Book listed patents—those are the only patents in this case that can trigger a 30 month stay and those are the only patents in this case that stand in the way of Collegium's market entry. The three patents that stand in the way of Collegium's final approval were already invalidated by the Southern District of New York and in a prior case, Purdue admitted that it was collaterally estopped from asserting claims related to those patents. The law is clear that collateral estoppel applies in cases such as this were a prior court invalidated the identical patents. The legal issues are simple and the parties are more than equipped to deal with them an expedited basis as there is no need to go beyond the pleadings to reach a decision.

## IV.  CONCLUSION

For the reasons set forth above, Collegium respectfully requests the Court to set an expedited hearing regarding Collegium's motion for partial judgment on the pleadings.

Respectfully submitted,

Date:  November 9, 2015                   By  _/s/  Jake M. Holdreith_____
                                          Jake M. Holdreith (admitted *pro hac vice*)
                                          Jamie R. Kurtz (admitted *pro hac vice*)
                                          Kelsey J. Thorkelson (admitted *pro hac vice*)
                                          Robins Kaplan LLP
                                          2800 LaSalle Plaza
                                          800 LaSalle Avenue
                                          Minneapolis, MN 55402–2015
                                          612–349–8500

                                          Christopher P. Sullivan (BBO#485120)
                                          Robins Kaplan LLP
                                          800 Boylston Street
                                          Suite 2500
                                          Boston, MA 02199


                                          *Attorneys for Defendant Collegium*
                                          *Pharmaceutical, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

this 9th day of November, 2015.

> _/s/Jake M. Holdreith_
> Jake M. Holdreith (admitted _pro hac vice_)

## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for the parties named in this matter have met and conferred

and have attempted in good faith to resolve or narrow the issue via telephone conference this 9th

day of November, 2015.

> _/s/Jake M. Holdreith_
> Jake M. Holdreith (admitted _pro hac vice_)